UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Ephraim M. Sutton,<br><br>                        Plaintiff,<br><br>    — against —<br><br><br>Associated Credit Services, Inc.<br><br>                        Defendant. | **17-cv-5370 (ARR) (ST)**<br><br><br>**Not for print or electronic publication**<br><br><br><br>**Opinion & Order** |

ROSS, United States District Judge:

The plaintiff, Ephraim M. Sutton, is suing the defendant, Associated Credit Services, Inc., for several alleged violations of the Fair Debt Collection Practices Act ("FDCPA"). The defendant has moved for summary judgment, and the plaintiff opposes.[1] For the reasons set forth below, the defendant's motion is granted in part and denied in part.

## BACKGROUND

The plaintiff claims that on August 31, 2016, he moved out of his home on Mill Avenue in Brooklyn and closed his utility account with National Grid, his natural gas supplier. V. Compl. ¶¶ 20–21, ECF No. 1; *see* Sutton Dep. Ex. 6 at 11:22–12:14, ECF No. 47-10. An invoice from a trucking company shows a pickup of "miscellaneous household items including small appliances, several boxes and furniture" from the plaintiff's Mill Avenue address, with a drop-off address on East Broadway, on that date. Trucking Invoice Ex. 4 at 2, ECF No. 47-8. That September, the

---

[1] The defendant's motion asks for an order granting it judgment on the pleadings but cites Federal Rule of Civil Procedure 56, which governs summary judgment. Def.'s Mot., ECF No. 46. Because the parties apply the summary judgment standard throughout their arguments, I treat the motion as one for summary judgment.

plaintiff called National Grid and asked for his final balance for service at the Mill Avenue address. Sutton Dep. Ex. 6 at 12:15–17. He paid the final balance of $357.00 or $397.57 over the phone with his credit card. *See id.* 12:17–18, 13:19–22, 14:16–22. Nonetheless, when the plaintiff stopped by his old home on Mill Avenue on March 8, 2017 and checked the mailbox, he found National Grid bills totaling $912 for service during the months after his move. *See* Sutton Dep. Ex. 8 at 17:2–18:10, ECF No. 47-12.

The plaintiff claims that he disputed this $912 debt with National Grid that same day. Pl.'s Rule 56.1 Statement ¶ 24, ECF No. 47-1. In support of this claim, he cites a Con Edison bill addressed to "Sarah Setton" for service at his Mill Avenue address that shows that the "Con Edison account was closed on SEP 01[.]" Con Edison Bill Ex. 2, ECF No. 47-6. He also cites a fax confirmation document from March 8, 2017, showing that he faxed two pages to "[National] [G]rid." Fax Confirmation Ex. 4 at 1. He contends that one of these two pages was the trucking invoice and the other was the Con Edison bill—presumably to prove to National Grid that he had, in fact, moved as a way of disputing that he had incurred the $912 in charges—but neither of those two documents contain any markings that show that they were part of any fax transmission. *See* Con Edison Bill Ex. 2; Trucking Invoice Ex. 4. Still, the plaintiff did testify at his deposition that he called National Grid, told its representative that he did not live at the Mill Avenue address as of August 31, and asked the representative to "[p]lease dispute" the bill. Sutton Dep. Ex. 8 at 18:25–19:7. In addition, a communication from National Grid to the defendant regarding the $912 debt contains the comment "STATUS DIS[.]" Communication from National Grid to Def. Ex. 3 at 1, ECF No. 47-7; *see* Affirmation in Opp'n to Summ. J. ¶ 4, ECF No. 47-2.

The plaintiff alleges that the defendant sought to collect the disputed $912 debt on National Grid's behalf. V. Compl. ¶ 26. He has not submitted a collection letter from the defendant in

connection with his opposition to the defendant's motion for summary judgment. Instead, he asserts—vaguely—in his Memorandum of Law that on July 15, 2017, the defendant "communicat[ed]" regarding the debt "without communicating the dispute"; it is not clear whether the defendant made this communication to the plaintiff himself, or to someone else, or whether or not the plaintiff is referring to a collection letter. Pl.'s Mem. of Law in Opp'n to Summ. J. ¶ 24, ECF No. 47 ("Pl.'s Br.").

In addition, the defendant reported the $912 debt to credit reporting agencies, including Equifax, on August 15, 2017. Def.'s Rule 56.1 Statement ¶ 4, ECF No. 46-1; Pl.'s Rule 56.1 Statement ¶ 34; *see* Equifax Report Ex. 13, ECF No. 47-17.[2] The plaintiff claims that the defendant communicated the debt to Equifax without informing Equifax that the plaintiff had disputed the debt. Pl.'s Rule 56.1 Statement ¶ 27. The plaintiff asserts that the defendant knew that he had disputed the $912 debt because National Grid had sent a document to the defendant that contained the comment "STATUS DIS[.]" Communication from National Grid to Def. Ex. 3 at 1. It is not clear when National Grid sent this document to the defendant; the document's first page shows an "ASGN" date of "07-03-17" and a "LST CHG" date of "02-02-17." *Id.* The remainder of the document appears to consist of a series of data entries with dates ranging from July through September of 2017. *See id.* at 1–7. In addition, a recording of a phone call that took place between the plaintiff and a representative of the defendant on August 31, 2017 reveals that the plaintiff told

---

[2] The plaintiff's counsel has referred to Exhibit 13 as "a true copy of the Defendant's report made to Equifax against Plaintiff's []credit report." Affirmation in Opp'n to Summ. J. ¶ 14. This document, dated August 18, 2017, shows a $912 debt owed to the defendant and does not state that the debt was disputed. *See* Equifax Report Ex. 13.  However, this document looks more like a report furnished *by* Equifax than a report furnished by the defendant *to* Equifax, as it uses the words "you" and "your" in a way that seems to address a consumer, and a web address at the bottom of the page begins with the term "econsumer." Equifax Report Ex. 13. Thus, it is not entirely clear from this document what exactly the defendant communicated to Equifax, and when.

the defendant that, regarding the National Grid debt, he "spoke to somebody and said" that he did

not know "what [you are] talking about." Phone Call Ex. B.[3] However, the defendant's Chief

Compliance and Security Officer, Walter Steele, *see* Def.'s Reply Mem. of Law 4, ECF No. 48,

testified that nobody, including National Grid, notified the defendant that the plaintiff had disputed

the debt until the plaintiff filed the instant lawsuit, *see* Steele Dep. Ex. 11 at 28:5–17, ECF No. 47-

15.

The plaintiff brings four FDCPA claims against the defendant. First, the plaintiff alleges

that the defendant falsely represented "the legal status of the debt by communicating the debt

without communicating its dispute[,]" in violation of 15 U.S.C. § 1692e(2)(A). V. Compl. ¶ 35. It

is not clear whether the alleged "communicati[on]" refers to a collection letter or other

communication from the defendant to the plaintiff, or to the defendant's report to Equifax. Second,

the plaintiff alleges that the defendant falsely represented "the debt as owed by [the plaintiff] when

in fact [the plaintiff] did not incur such debt[,]" also in violation of § 1692e(2)(A). V. Compl. ¶

36. Third, the plaintiff alleges that the defendant "communicated false information to a third person

about [the plaintiff's] account, [when the defendant] knew or should have known that the debt is

disputed"—referring to the defendant's report to Equifax—in violation of § 1692e(8). V. Compl.

¶ 37. Fourth, the plaintiff alleges that the defendant falsely implied "that the referral of the debt to

a collector voided the dispute made with the creditor, which falsely implies that the consumer lost

a defense to account stated[,]" in violation of § 1692e(6)(A). V. Compl. ¶ 38. The facts underlying

this claim are not apparent. The plaintiff explains that "[d]ebt collectors routinely use a cause of

action of Account Stated to commence judicial action against a debtor for a debt that is otherwise

---

[3] The defendant provided this sound recording to me and to the plaintiff but did not file it on
ECF.

unascertainable." *Id.* ¶ 10. He asserts that the defendant "has a malicious practice of troubling

debtors into collection of a disputed debt, without communicating the dispute, by reporting an

account stated to a credit reporting agency, and informing the debtor that the account stated is duly

owed," *id.* ¶ 15, and that "[t]he least sophisticated consumer does know [sic] what Account Stated

means[,]" *id.* ¶ 32. Beyond these allegations, neither the complaint nor any of the evidence that the

plaintiff submitted in connection with the instant motion offers any factual basis for or coherent

explanation of this claim.

The defendant has moved for summary judgment on all four claims. The plaintiff opposes.

## DISCUSSION

### I.      Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The function of the court is not to resolve disputed issues, but to determine whether

there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

"While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of

either party, materiality runs to whether the dispute matters, i.e., whether it concerns facts that can

affect the outcome under the applicable substantive law." *McPherson v. Coombe*, 174 F.3d 276,

280 (2d Cir. 1999) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)) (internal

quotation marks and ellipses omitted).

In assessing whether summary judgment is appropriate, the court considers "the pleadings,

depositions, answers to interrogatories and admissions on file, together with any other firsthand

information including but not limited to affidavits." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir.

2011) (quoting *In re Bennett Funding Grp., Inc.*, 336 F.3d 94, 99 (2d Cir. 2003)); *see Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party carries the burden of proving

that there is no genuine dispute respecting any material fact and "may obtain summary judgment

by showing that little or no evidence may be found in support of the nonmoving party's case."

*Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir. 1994). Once

this burden is met, in order to avoid the entry of summary judgment, the non-moving party "must

come forward with specific facts showing that there is a genuine issue for trial." *LaBounty v.*

*Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) (citing *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d

522, 525–26 (2d Cir. 1994)). In reviewing the record before it, "the court is required to resolve all

ambiguities and draw all permissible factual inferences in favor of the party against whom

summary judgment is sought." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997).

## II.      § 1692e(2)(A)

Section 1692e of the FDCPA prohibits debt collectors from using "any false, deceptive, or

misleading representation or means in connection with the collection of any debt." 15 U.S.C. §

1692e. Section 1692e(2)(A) in particular prohibits "[t]he false representation of . . . the character,

amount, or legal status of any debt[.]" § 1692e(2)(A).

The plaintiff first alleges that the defendant violated § 1692e(2)(A) "by communicating the

debt without communicating its dispute." V. Compl. ¶ 35. The defendant argues that it made "no

false representations . . . to the plaintiff." Def.'s Mem. of Law in Supp. of Mot. for Summ. J. 11,

ECF No. 46-2 ("Def.'s Br."). The defendant contends that the plaintiff "claims that he disputed

the debt with National Grid but has provided no evidence of that dispute." *Id.* However, the

plaintiff testified at his deposition that he asked National Grid to "[p]lease dispute" the bills that

he continued to receive at his Mill Avenue address after he moved out on August 31, 2016. Sutton

Dep. Ex. 8 at 18:25–19:7. He also submitted a document that, though undated and ambiguous on

6

its face, he describes as a communication from National Grid to the defendant and that contains

the comment "STATUS DIS[.]" Communication from National Grid to Def. Ex. 3 at 1. This

comment supports the inference that the plaintiff disputed the debt with National Grid. The

defendant also argues that the plaintiff has not provided any evidence that he disputed the debt

with the defendant itself. Def.'s Br. 11. However, the communication from National Grid to the

defendant, containing the "STATUS DIS" comment, suggests that the defendant should have

known about the dispute.[4] In any event, "[t]he FDCPA is 'a strict liability statute[.]'" *Vangorden*

*v. Second Round, Ltd. P'Ship*, 897 F.3d 433, 437–38 (2d Cir. 2018).

The defendant's contention that "National Grid doesn't refer disputed accounts to the

defendant" is irrelevant, as the plaintiff has raised a genuine issue as to whether National Grid did,

in fact, refer a disputed account to the defendant in this instance. Def.'s Reply 3. The defendant

also argues that National Grid could not have marked the plaintiff's debt as disputed in March

2017 because in August 2018, "National Grid forwarded plaintiff's account to a different debt

collector." *Id.* at 2–3; *see* Transworld Letter Ex. 14, ECF No. 47-18. That National Grid assigned

the debt to a different collector does not establish, on summary judgment, that the plaintiff never

disputed the debt in the first place.

The plaintiff next alleges that the defendant falsely represented "the debt as owed by [the

---

[4] The August 31, 2017 phone call between the plaintiff and a representative of the defendant could also show that the plaintiff disputed the debt with the defendant, as the plaintiff told the defendant's representative that he "spoke to somebody and said" that he did not know "what [you are] talking about." Phone Call Ex. B. However, the parties agree that the defendant reported the debt to Equifax on August 15, 2017—before this phone call took place. Def.'s Rule 56.1 Statement ¶ 4; Pl.'s Rule 56.1 Statement ¶ 34. Further, the plaintiff claims that the defendant communicated with him regarding the debt in July 2017. *See* Pl.'s Br. ¶ 24. Thus, whether the communication at issue in the plaintiff's first claim is the defendant's report to Equifax or some collection effort as between the defendant and the plaintiff—which, again, is quite unclear—then this phone call does not show any awareness of the dispute on the defendant's part before making the communication.

plaintiff] when in fact [the plaintiff] did not incur such a debt." V. Compl. ¶ 36. In moving for summary judgment, the defendant merely argues that the plaintiff "did incur a debt with National Grid[,]" as he does not "claim identity theft or that he was misidentified as the obligor of the debt when he was never obligated to pay it." Def.'s Br. 12. Although the plaintiff did incur a debt with National Grid for his balance before moving on August 31, 2016—which he claims to have paid— he also testified that he did not incur the $912 charge for services after that date. Sutton Dep. Ex. 8 at 18:4, 19:2–7. Thus, the defendant's bare assertion that the plaintiff incurred some debt is not enough to warrant summary judgment.

Admittedly, I have some concerns about the plaintiff's ability to prove his § 1692e(2)(A) claims at trial. His complaint is vague as to whether the defendant's alleged false representations appear in its report to Equifax or in some communication to the plaintiff, and his argument in opposition to summary judgment is equally unclear on this matter. Nor has the plaintiff submitted proof of the contents of the defendant's report to Equifax or any collection letter or other communication between the defendant and the plaintiff. However, the defendant has not raised these arguments, and I will not grant summary judgment on a ground to which the plaintiff has had no opportunity to respond. Thus, given that the defendant has not cited to any case law that suggests that, on the plaintiff's view of the disputed facts, no false representation occurred, I deny summary judgment on the plaintiff's § 1692e(2)(A) claims.

**III.    § 1692e(8)**

Section 1692e(8) prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). The plaintiff alleges that the defendant reported his disputed $912 debt to Equifax without informing Equifax that he had

disputed that debt. *See* V. Compl. ¶ 27. In moving for summary judgment, the defendant contends

that it is undisputed that (1) "the plaintiff never disputed the debt with National Grid" or with the

defendant, (2) "National Grid never communicated any dispute to the defendant," and (3) "there

is no indication that National Grid ever knew of any dispute." Def.'s Br. 12. As discussed, the

plaintiff has indeed raised disputes of fact as to these issues. Namely, the communication between

National Grid and the defendant contains the comment "STATUS DIS[,]" which supports the

inference that the defendant at least should have known that the debt was disputed. Communication

from National Grid to Def. Ex. 3 at 1. Again, I have concerns about the plaintiff's ability to prove

this claim at trial. For example, without knowing when National Grid transmitted its "STATUS

DIS" comment to the defendant, it would be difficult for a jury to conclude that the defendant

knew or should have known that the plaintiff's debt was disputed before reporting it to Equifax.

Nonetheless, on summary judgment, the movant bears the burden to prove that there is no genuine

issue of material fact. *See Gallo*, 22 F.3d at 1223. The defendant's bare assertions do not satisfy

that burden. Thus, I deny summary judgment on the plaintiff's § 1692e(8) claim.

## IV.   § 1692e(6)(A)

Section 1692e(6)(A) prohibits "[t]he false representation or implication that a sale, referral,

or other transfer of any interest in a debt shall cause the consumer to . . . lose any claim or defense

to payment of the debt[.]" 15 U.S.C. § 1692e(6)(A). As discussed, the plaintiff's allegations

regarding his § 1692e(6)(A) claim are vague. The defendant argues that because "nothing in any

of the discovery demands or responses" addresses this allegation, and "no facts alleged by the

plaintiff . . . discuss losing any claim or defense to payment of the debt[,]" the plaintiff appears to

have "abandoned" this claim, and I should grant summary judgment. Def.'s Br. 13. The plaintiff

responds that the defendant impermissibly implied that his dispute of the debt with National Grid

"became extinct" when National Grid engaged the defendant to collect the debt, and that the defendant impermissibly required the plaintiff to dispute the debt anew, directly with the defendant and using "the magic word 'dispute[.]'" Pl.'s Rule 56.1 Statement ¶ 25; Pl.'s Br. ¶ 24. However, the plaintiff has not cited any evidence that supports this claim. Instead, he cites the following portions of the record: (1) the August 31, 2017 phone call wherein the plaintiff told the defendant's representative that he did not know what the supposed $912 debt was "about," Phone Call Ex. B; (2) Steele's testimony that before the plaintiff filed this lawsuit, no one had made the defendant aware that the debt was disputed, Steele Dep. Ex. 11 at 27:24–28:9; and (3) the "STATUS DIS" comment, Communication from National Grid to Def. Ex. 3 at 1; *see* Pl.'s Rule 56.1 Statement ¶¶ 24–25; Pl.'s Br. ¶ 25. All that these portions of the record show is that the plaintiff maintains that he disputed the debt with National Grid and that National Grid communicated that dispute to the defendant, while the defendant maintains that it did not know that the debt was disputed. They do not support the inference that the defendant falsely represented or implied that the referral of the debt to the defendant for collection extinguished the plaintiff's claim that he disputed the debt. Thus, "little or no evidence may be found in support of the [plaintiff's claim]." *Gallo*, 22 F.3d at 1223–24. I grant summary judgment for the defendant on the § 1692e(6)(A) claim.

## CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is denied with respect to the §§ 1692e(2)(A) and 1692e(8) claims and granted with respect to the § 1692e(6)(A) claim.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge


Dated:          January 9, 2020
                Brooklyn, New York

11